Filed 12/28/20  P. v. Lau CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANA BRANT LAU,<br><br>    Defendant and Appellant. | D077049<br><br><br>(Super. Ct. No. SCD279151) |

APPEAL from a judgment of the Superior Court of San Diego County, Amalia L. Meza, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

During a trial in which Dana Brant Lau was charged with one count of sexual penetration (count 1) (Pen. Code, § 289, subd. (a)),[1] one count of assault with intent to commit sexual penetration (count 2) (§ 220, subd. (a)(1)), and one count of assault by means of force likely to cause great bodily injury (count 3) (§ 245, subd. (a)(4)), the jury found Lau guilty of a single count of simple assault (§ 240) as a lesser included offense of count 3.  The trial court sentenced Lau to credit for time served.  Although Lau was not convicted of a crime requiring that he register as a sex offender (§ 290, subd. (c)), the trial court found by a preponderance of the evidence that Lau committed the simple assault as a result of sexual compulsion or for purposes of sexual gratification, and it accordingly ordered Lau to register as a sex offender pursuant to its discretionary authority under section 290.006, subdivision (a).

Lau appeals from the portion of the judgment requiring that he register as a sex offender.  Lau contends (1) the trial court erred in applying a preponderance of the evidence standard; (2) the registration order violated *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) because it was based on facts found by a judge, not by a jury; (3) the trial court violated his right to due process because it purportedly premised its ruling on unreliable evidence of uncharged crimes and unproven out-of-state convictions; and (4) substantial evidence does not support the trial court's finding that he committed the offense as a result of sexual compulsion or for purposes of sexual gratification.  We conclude that Lau's contentions lack merit, and we accordingly affirm the judgment.

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Lau and Mary M. were both homeless and lived on the streets in San Diego. Early in the morning on October 21, 2018, Mary M. entered a 7-Eleven store and asked an employee to call 911 because she had been attacked by Lau. A short time later, Lau followed Mary inside the store, and the two briefly yelled at each other before Lau left. When police arrived, Mary M. reported that she woke up with Lau sexually assaulting her, including kissing her neck, and that he then digitally penetrated her.

Later that morning, Mary underwent a sexual assault examination by a forensic nurse. The exam revealed bruising to Mary's external genitalia and also an abrasion to Mary's cervix, consistent with digital penetration. Samples were collected for DNA analysis, and it was later discovered that male DNA was found on Mary's breast in a low level and also on Mary's neck. The DNA from Mary's neck was able to be further analyzed, showing "strong support" for identifying Lau as a contributor.

Detectives interviewed Lau on October 26, 2018, at the police station. For the first part of the interview, Lau maintained that his interaction with Mary on the morning of October 21, 2018, consisted of a failed drug transaction, during which Mary asked to buy methamphetamine from him but then kept the drugs without giving him the money. Lau stated that when Mary did not pay him and refused to return the drugs, he physically struggled with her and patted down her body to try to find the drugs. Lau explained that Mary then broke free from him and ran into the 7-Eleven, where she reported that Lau had attacked her. Lau contended that Mary accused him of sexual assault because it was an easy way of getting drugs without having to pay for them.

3

When the detectives asked why they might find Lau's saliva on Mary's neck, Lau stated that he may have touched Mary's neck with his mouth because he was angry about the drugs and was going to bite her. As the detectives continued questioning Lau they asked, without a factual basis to do so, if there was any reason for them to find his DNA from finger scrapings in Mary's vagina.

Lau eventually stated that he had sexual contact with Mary because he thought that she liked him, but, in fact, she was just baiting him. Because Lau's statements to the detectives are relevant to the issues presented in this appeal, we set forth some of those statements in more detail.[2] In part, the following conversation took place:

> "[Detective]: I mean, did you- did- so she- so she gave you indications that she was interested?
>
> "[Lau]: Kinda.
>
> "[Detective]: So did you think it might be ok if you hooked up with her? She might reciprocate?
>
> "[Lau]: Yeah, but it's a- it never- it never fuckin fails. It's always fucked.
>
> "[Detective]: So it wasn't about the dope then?
>
> "[Lau]: (Unin), I- I liked her but she was giving me like- like the come on shorty we'll (unin) it was just, ugh.
>
> "[Detective]: Tell me more about that.
>
> "[Lau]: Why? That's what they do. They bait you in, you know what I'm sayin? And then run and call rape. Fuck that shit nigga. You know what I'm sayin? It's hard dawg, it's hard.

---

[2] The references to "(unin)" represent unintelligible portions of the transcript as reflected in the transcript used as an exhibit at trial.

"[Detective]: I can imagine it's hard out there, and that's why we want to get to know what's going on with you.

"[Lau]: I'm just lonely. Just fuckin tired. I fuckin (unin) I'm not- I'm not- I'm not no weirdo rapist. It's just fuckin bitches be playing so many fucking games dude, and I ain't got no patience so I'm not going to wait. I'm just- you know I'm saying? Then I- then I catch myself. I'm like, 'I'm not that dude.' Then by then it's too late and they got (unin) you know what I'm sayin? You grab them and you know wait a minute baby, (unin) you know what I'm sayin? 'ahh!' you know so all hell breaks loose."

Later in the interview, Lau told the detectives, "Bait bitches don't want nobody rubbing down and kissing on them and trying to give them (unin). They just, I don't know, . . . that's a way out. Once you touch them and try to get sexual with them, they 'ahh' that's their fuckin, eh, eh, eh, call the police, call the police. That's what they do." Lau said, "So that's what I'm gonna start to do is just go to the whorehouse and I will have no problems. I think that's better off. Just go to TJ and buy some pussy, shit." The detectives asked Lau, "So, you laid down with her, hugged her a bit, were kissing on her neck, touching her, and that's when she freaked out?" Lau answered, "Yeah, I guess," and then "Yeah, obviously, yeah." The detectives asked, "Alright. So, was it . . . putting your hand in her pants that really set her off?" Lau answered, "I don't know." The detectives asked, "Was that what happened?" Lau said, "I guess. She didn't say no to it."

Toward the end of the interview, Lau stated, "I'm getting upset nigga because this is bullshit dawg, that I got in again. Once again it's my fault. It's all my fault for trying to be a man and be with a woman and not go to fuckin hell. . . . I'm trying to sleep with a woman and a bitch call rape on your ass, sexual assault, whatever. Nigga, fuck that shit." When the detectives asked Lau to state what he would say to apologize to Mary, Lau said: "I apologize for any- I thought you liked me, you didn't like me, and-

and- and- and I got a little excited, and . . . overanxious, and . . . I went too far. (unin). Please don't throw the book at me, just understand that men are men and we don't know what you- what makes you guys tick and makes you guys (unin). I don't know either, you know what I'm sayin? I don't mean it in a disrespectful way, I just- I'm not a bad person, girl, I'm just, you know what I'm sayin? I'm sincerely sorry."

Lau was charged with one count of sexual penetration (§ 289, subd. (a)), one count of assault with intent to commit sexual penetration (§ 220, subd. (a)(1)), and one count of assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)).

At trial, Mary testified about the sexual assault. Mary explained that she was acquainted with Lau because she had interacted with him for the first time a week prior to the assault when they spoke for a few minutes. According to Mary, early in the morning of October 21, 2018, she was sleeping on the sidewalk, facing a wall, when she woke up with Lau laying down beside her, pressing against her back. She could feel Lau's erection against her lower back, and Lau had his arms around her. Lau was groping one of Mary's breasts and was kissing and biting the back of her neck. Although Mary was unsure of the sequence of events, she testified that at some point she screamed, Lau choked her, and Lau digitally penetrated her vagina. During the assault, Lau said, "I'll take care of you" and "It's going to be okay." Mary struggled against Lau and managed to push herself up, turn, and look at Lau. She then used her wits to stop the assault by acting like she was struggling only because she did not realize that Lau was the person behind her. She said, " 'Oh, my God. . . . You scared me. . . . I didn't know it was you. You know I don't wake up well.' " Mary told Lau she would go to 7-

6

Eleven to urinate, and quickly walked away, with Lau following behind her. Mary then reported the attack to an employee at 7-Eleven.

Mary admitted during her testimony that she had problems with her memory due to two mini-strokes and that she had nightmares about the incident that caused her to be confused. Defense counsel was able to call Mary's credibility into question by presenting evidence that Mary lied about whether she used methamphetamine. Specifically, although Mary stated multiple times after the assault that she did not take drugs near the time of the assault, and continued to maintain that fact at trial, an analysis of the urine sample that Mary provided during her sexual assault examination was positive for methamphetamine.

Lau testified at trial and denied sexually assaulting Mary. Lau set forth a version of events that was similar to what he told the detectives during the first part of his police interview. Specifically, Lau stated that he knew Mary because he had sold methamphetamine to her two or three days before the incident. According to Lau, early in the morning of October 21, 2018, Mary waved him over because she wanted to buy more methamphetamine. Lau gave Mary the drugs and was looking out for police and robbers when Mary started fumbling around to find the money to pay him. When Mary failed to hand over any money, Lau told her to give back the drugs, but Mary claimed she didn't have any drugs. Lau then grabbed Mary and patted her down, trying to find the drugs. According to Lau, his DNA could have been on Mary's neck because his mouth touched Mary's neck when he grabbed her to find the drugs. Mary eventually broke free from him and ran to 7-Eleven. Lau followed Mary but then left before the police arrived because he was a drug dealer and didn't want to interact with the police.

The audio recording of Lau's interview with the detectives was played for the jury at trial. Lau explained that he made statements to the detectives about engaging in sexual activity with Mary only because "they badgered me so much, I was ready to tell them whatever they wanted to get out of the damn room."

During closing argument, defense counsel argued that Mary was not a credible witness, and that accordingly, the People had not proved beyond a reasonable doubt that Mary's story, rather than Lau's, was true.

The jury found that Lau was not guilty of any of the three offenses charged against him. For the counts charging assault with intent to commit sexual penetration (§ 220, subd. (a)(1)) and assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)), the jury was instructed on the lesser included offense of simple assault (§ 240). The jury found Lau not guilty of the lesser included offense of simple assault for the count charging assault with intent to commit sexual penetration, but guilty of that lesser included offense for the count charging assault by means of force likely to cause great bodily injury.

At the sentencing hearing, the trial court sentenced Lau to credit for time served. At the request of the People, the trial court also required Lau to register as a sex offender pursuant to its discretionary authority under section 290.006, finding by a preponderance of the evidence that Lau committed the simple assault as a result of sexual compulsion or for purposes of sexual gratification. In making that finding, the trial court read extensively from the portion of Lau's interview with the detectives in which Lau admitted to engaging in sexual activity with Mary. The trial court

8

stayed the registration requirement pending appeal.[3]

Lau appeals from the order requiring him to register as a sex offender.

## II.

## DISCUSSION

A.   *The Trial Court Properly Applied the Preponderance of the Evidence Standard of Proof*

We first address Lau's challenge to the trial court's application of the preponderance of the evidence standard in finding that Lau committed the assault as a result of sexual compulsion or for purposes of sexual gratification.

In deciding to apply the preponderance of the evidence standard, the trial court relied on our Supreme Court's opinion in *People v. Mosley* (2015) 60 Cal.4th 1044, 1052, footnote 4 (*Mosley*).  Lau states that he "cannot find any language in *People v. Mosley* requiring the preponderance of the evidence standard to apply" and that any discussion of the applicable standard "was dicta."  Lau argues that either the clear and convincing standard or the

---

[3]   We note that in making its order that Lau register as a sex offender, the trial court observed that the sex offender registration statutes would be amended, effective January 1, 2021, to provide that not all sex offenders are subject to a lifetime registration requirement.  Operative January 1, 2021, the amended statutory provisions will require an adult offender to register for a minimum of 10 or 20 years or for life, depending upon the offender's designated "tier."  (See Stats. 2017, ch. 541, § 4; Stats. 2018, ch. 423, § 52.) Persons subject to discretionary registration will be required to "register as a tier one offender . . . , unless the court finds the person should register as a tier two or tier three offender and states on the record the reasons for its finding."  (See Stats. 2017, ch. 541, § 4.)  The trial court stated, "So my intent is to not impose a term.  It's to impose sex registration and then without findings as to whether it's tier one, tier two or tier three.  And when the law takes effect in 2021, if it is applied retroactively, this will be treated as a tier one because I will not have made findings as to tier two or tier three because the law is not operative."

9

beyond a reasonable doubt standard should apply.[4]  As we will explain, although appearing in dicta, our Supreme Court has twice approved the application of the preponderance of the evidence standard in reviewing a discretionary sex offender registration order.  Further, the court of appeal opinion that our Supreme Court cited in support of that standard, *People v. Marchand* (2002) 98 Cal.App.4th 1056, 1058 (*Marchand*), constitutes long-standing authority for the proposition that the preponderance of the evidence standard applies to a trial court's order requiring sex offender registration.

Before turning to the applicable standard of proof, we briefly discuss the relevant statutory context for the sex offender registration order made by the trial court.  "California law has long *required* persons convicted of certain specified sex crimes . . . to register as sex offenders as long as they live or work in California.  (§ 290, subds. (b), (c).)  If the conviction is for an offense other than those automatically requiring registration, the court may nonetheless [under section 290.006] exercise its *discretion* to impose a registration requirement if the court finds the offense was sexually motivated or compelled, and that registration is justified by the defendant's risk of reoffense."  (*Mosley*, *supra*, 60 Cal.4th at p. 1048, italics added; see also *Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 78 (*Lewis*) ["Since the purpose of sex offender registration is to keep track of persons likely to reoffend, one of the 'reasons for requiring registration' under section 290.006 must be that the defendant is likely to commit similar offenses . . . like those listed in section 290 . . . in the future."].)

Specifically, section 290.006 provides, "(a) Any person ordered by any court to register pursuant to the Act for any offense not included specifically

_____

4     In the trial court, Lau argued that the trial court should apply a beyond a reasonable doubt standard.

10

in subdivision (c) of Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration." (§ 290.006.) "[D]iscretionary registration does not depend on the specific crime for which a defendant was convicted. Instead, the trial court may require a defendant to register under section [290.006] even if the defendant was not convicted of a sexual offense." (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1197-1198 (*Hofsheier*), overruled on other grounds, *Johnson v. Dept. of Justice* (2015) 60 Cal.4th 871, 882.)

Section 290.006 does not specify the standard of proof that the trial court should apply in making a finding that the defendant committed the offense as a result of sexual compulsion or for purposes of sexual gratification. However, in *Marchand*, *supra*, 98 Cal.App.4th at page 1058, the court stated that the discretionary sex offender registration statute "does not demand that the court find the predicate fact was proved beyond a reasonable doubt, and thus it is subject to proof by a preponderance of the evidence." (*Ibid*.) In support of that statement, *Marchand* cited Evidence Code section 115, which sets forth the three possible standards of proof (beyond a reasonable doubt, preponderance of the evidence, and clear and convincing proof), and then states that "[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." By citing Evidence Code section 115, *Marchand* indicated that because neither section 290.006, nor any other law, requires a different standard of proof for a finding that the defendant committed the offense as a result of

sexual compulsion or for purposes of sexual gratification, the default preponderance of the evidence standard applies.[5]

Our Supreme Court has twice approved of the principle, set forth in *Marchand*, that a preponderance of the evidence standard applies when the court makes an order requiring sex offender registration. First, in *People v. McCullough* (2013) 56 Cal.4th 589, 598 (*McCullough*) our Supreme Court cited *Marchand* with approval in giving examples of situations in which the preponderance of the evidence standard of proof applies when the trial court makes an order that does not constitute " 'punishment' for constitutional purposes.' " More recently, in *Mosley,* our Supreme Court stated that to impose a sex offender registration requirement under section 290.006, "the required finding need only be found true by a preponderance of the evidence." (*Mosley, supra,* 60 Cal.4th at p. 1052, fn. 4.) *Mosley* made this statement in the course of explaining the trial court's ruling requiring that the defendant register as a sex offender. As *Mosley* stated, "The court indicated it was making this finding beyond a reasonable doubt although fully aware that, under the discretionary registration statute, *the required finding need only be*

---

[5]    Further, *Marchand* concluded that because sex offender registration did not constitute punishment or penalty for the purpose of the due process clause, there was no reason to apply the reasonable doubt standard required by *Apprendi* for "any fact that increases the penalty for a crime beyond the prescribed statutory maximum . . . ." (*Apprendi, supra,* 530 U.S. at p. 490; *Marchand, supra,* 98 Cal.App.4th at p. 1065.)  That holding comports with our Supreme Court's subsequent holding in *Mosley, supra,* 60 Cal.4th at page 1067, that sex offender registration imposed under section 290.006 (even in light of the residency restrictions set forth in section 3003.5, subdivision (b)) does not constitute punishment or penalty for the purpose of *Apprendi*.  (See also *People v. Picklesimer* (2010) 48 Cal.4th 330, 343-344 (*Picklesimer*) [*Apprendi*'s requirement of a finding beyond a reasonable doubt, made by a jury, has no application to a trial court's findings requiring sex offender registration].)  We discuss this aspect of *Mosley*'s holding in the next section of our opinion.

*found true by a preponderance of the evidence*. (§ 290.006.)" (*Mosley*, at p. 1052, fn. 4, italics added.) Although the pertinent discussion in both *McCullough* and *Mosley* are dicta because they were not necessary to the outcome of those opinions, "[o]ur Supreme Court's dicta are 'highly persuasive,' and we will generally follow it unless there is a compelling reason not to do so." (*Masellis v. Law Office of Leslie F. Jensen* (2020) 50 Cal.App.5th 1077, 1093.)

Citing constitutional principles of equal protection, Lau contends that because "[a] defendant charged with a crime requiring mandatory registration under section 290 will be required to register only if the crime is proven beyond a reasonable doubt[,]" the same standard should apply when the trial court makes a finding to support a discretionary registration order under section 290.006 that the defendant committed the crime as a result of sexual compulsion or for purposes of sexual gratification. Although neither *Marchand*, *Mosley*, nor *McCullough* addressed whether principles of equal protection require the application of a beyond a reasonable doubt standard of proof under section 290.006, as we will explain, we conclude that Lau's equal protection argument lacks merit and does not present a sound reason for us to diverge from our Supreme Court's statements in *McCullough* and *Mosley* about the applicable standard of proof.

Where, as here, no suspect class or fundamental right is involved, "[i]n order to decide whether a statutory distinction is so devoid of even minimal rationality that it is unconstitutional as a matter of equal protection, we typically ask two questions. We first ask whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner. . . . If we deem the groups at issue similarly situated in all material respects, we consider whether the challenged classification

13

ultimately bears a rational relationship to a legitimate state purpose. . . . A classification in a statute is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable." (*People v. Chatman* (2018) 4 Cal.5th 277, 289 (*Chatman*), citations omitted.)

Without deciding whether the two groups of defendants Lau compares are similarly situated, the equal protection argument fails because a "rational basis for the unequal treatment is reasonably conceivable." (*Chatman, supra*, 4 Cal.5th at p. 289.) The Legislature has determined that persons convicted of the crimes enumerated in section 290, subdivision (c) are " ' "deemed . . . likely to commit similar offenses in the future." ' " (*In re Alva* (2004) 33 Cal.4th 254, 264.) In contrast, defendants convicted of crimes not enumerated in section 290, subdivision (c) have not committed the type of crime that legislatively deems them likely to reoffend. Thus, there is a reasonable ground to require a separate finding by the trial court under the preponderance of the evidence standard to impose a registration requirement under section 290.006 for those defendants. Only for a defendant who did *not* commit one of the enumerated sex crimes does it make sense for the trial court to make a finding that the defendant committed the crime as a result of sexual compulsion or for purposes of sexual gratification.

Lau also contends that because of the burdens associated with sex offender registration, we should depart from the default preponderance of the evidence standard set forth in Evidence Code section 115, and, at a minimum, apply a clear and convincing standard of proof. We reject the argument. In stating that the preponderance of the evidence standard applies "[e]xcept as otherwise provided by law," Evidence Code section 115 "means, 'unless a heavier or lesser burden of proof is specifically required in a particular case by constitutional, statutory, or decisional law.' " (*People v.*

14

*Burnick* (1975) 14 Cal.3d 306, 314, italics omitted; see also *People v. Arriaga* (2014) 58 Cal.4th 950, 962 ["If the Legislature has not established a standard of proof, a court must determine the appropriate standard by considering all aspects of the law"].) Lau has cited no constitutional, statutory, or decisional law endorsing a departure from the preponderance of the evidence standard in the context of section 290.006. In the absence of any contrary authority, we follow *Marchand*, as well as our Supreme Court's dicta in both *McCullough* and *Mosley,* to conclude that the trial court properly applied the preponderance of the evidence standard in requiring sex offender registration under section 290.006. (*Marchand*, *supra,* 98 Cal.App.4th at pp. 1063-1065; *McCullough, supra,* 56 Cal.4th at p. 598; *Mosley, supra,* 60 Cal.4th at p. 1052, fn. 4.)

B.    *The Trial Court Did Not Err By Basing Its Order on Facts Found by the Court Rather Than by the Jury*

We next address an argument that Lau acknowledges is foreclosed by binding authority from our Supreme Court but that he asserts to preserve for future review. Specifically, Lau contends that, pursuant to *Apprendi, supra,* 530 U.S. at page 490, the facts underlying an order to register as a sex offender under section 290.006 must be made by a jury rather than by the trial court.

"[I]n *Apprendi,* the high court established that a criminal defendant generally has the Sixth Amendment right to a jury determination, beyond reasonable doubt, of 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum.' " (*Mosley, supra,* 60 Cal.4th at p. 1054.) In *Mosley*, as in this case, the defendant relied on *Apprendi*, claiming that "his registration order is invalid because it increased the maximum penalty, or punishment, for his simple assault conviction and was imposed solely on the basis of findings made by a judge, not a jury." (*Ibid*. [analyzing the effect

15

of a sex offender registration order made under section 290.006, including the residency restrictions imposed by § 3003.5, subd. (b)].) *Mosley* rejected the argument, holding that *Apprendi* did not require that the facts supporting an order requiring registration as a sex offender be found by a jury. (*Mosley*, at p. 1050.) As *Mosley* explained, sex offender registration is "a legitimate, nonpunitive regulatory device" and thus does not constitute a penalty for purposes of *Apprendi*. (*Mosley*, at p. 1050.)

Prior to *Mosley*, our Supreme Court reached the same conclusion in *Picklesimer, supra*, 48 Cal.4th at page 343, in which it rejected the argument that "application of section 290.006 is unlawful because it permits imposition of heightened punishment based on findings of fact by a trial court rather than a jury, in violation of *Apprendi* . . . and its progeny." *Picklesimer* observed that " 'sex offender registration is not considered a form of punishment under the state or federal Constitution[,]' " and accordingly concluded that "*Apprendi's* requirement that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt' . . . has no application here." (*Picklesimer,* at pp. 343-344.)

Lau contends that despite these authorities we should conclude that the facts supporting an order requiring registration under section 290.006 be found by a jury because "sex offender registration is punishment with[in] the meaning of the federal and State Constitutions . . . ." We reject Lau's argument, as we are bound to follow our Supreme Court's holding in *Mosley and Picklesimer*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

C.   *The Trial Court Did Not Base Its Ruling on Unreliable and Unproven Facts*

16

Lau argues that the trial court's registration order should be reversed because it was based on unproven and unreliable facts, the consideration of which violated his right to due process and created a fundamentally unfair proceeding.[6]

To support his argument, Lau contends that the trial court premised its registration order, at least in part, on prior convictions and uncharged crimes that the People described in their sentencing statement. Specifically, in arguing that Lau should be required to register as a sex offender, the People's sentencing statement described uncharged sexual assaults that Lau allegedly committed against two different women in 2017 and 2018. It also described a misdemeanor sex crime conviction in Oregon in 1991 that required Lau to register as a sex offender in that state, and two convictions for failing to register as a sex offender—one in Nevada in 1999 and one in California in 2006. The sentencing statement explains that the prosecutor unsuccessfully attempted to obtain information about those cases. Both in the sentencing statement and at the sentencing hearing, the prosecutor referred to Lau's "RAPs" as the source of the information about the prior convictions, but no documentation was provided to the trial court. Lau contends that the trial

---

[6] For his due process argument, Lau cites *People v. Eckley* (2004) 123 Cal.App.4th 1072, 1080. "Although not all the procedural safeguards required at trial also apply in a sentencing or probation hearing, such a hearing violates due process if it is fundamentally unfair. (*People v. Peterson* (1973) 9 Cal.3d 717, 726.) 'Reliability of the information considered by the court is the key issue in determining fundamental fairness' in this context. (*People v. Arbuckle* (1978) 22 Cal.3d 749, 754-755.) A court's reliance, in its sentencing and probation decisions, on factually erroneous sentencing reports or other incorrect or unreliable information can constitute a denial of due process. In *Townsend v. Burke* (1948) 334 U.S. 736, 741, a defendant 'was sentenced on the basis of assumptions concerning his criminal record which were materially untrue.' This was 'inconsistent with due process of law' and required reversal." (*Eckley*, at p. 1080.)

court *must have* relied on this criminal history as part of its order requiring him to register as a sex offender, and that the trial court therefore violated his right to due process by basing its order on unreliable and unproven facts.

We reject the argument because the trial court was very clear about the evidence upon which it relied in making its registration order. That evidence did *not* include any of Lau's uncharged crimes or his previous convictions. Specifically, the trial court explained that it "looked at the recorded statements of the Defendant that he made to [the detectives] on October 26, 2018, that was made part of the record." The trial court went on to read extensively from the transcript of that interview. The trial court then stated,

> "So the Court looked at all of the statements made by the Defendant at the time that the detectives were conducting an investigation, and the Court finds that there is a preponderance of the evidence that it is more likely true than not true that the offense, the assault in this case was committed for purposes of sexual gratification, or as a result of sexual compulsion.

> "The Defendant's very own statements corroborate the account given by the victim about what happened between them on October 21, 2018, and establish by a preponderance of the evidence that the assault was for sexual compulsion and sexual gratification.

> "Further, the statements of the Defendant give us an indication that Defendant has had this problem before. This is not the first time. And it concerns the Court that without registration he is likely to do it again.

> "Hence, it appears to the Court the Defendant is physically dangerous to the public and at serious risk of reoffending. For all these reasons, pursuant to Penal Code section 290.006(a), the Court is ordering sex offender registration."

We see no indication in these comments that the trial court based its ruling, in *any* part, on the prior convictions and uncharged acts described in

18

the People's sentencing statement. Lau points out that the trial court stated that Lau "has had this problem before" and "[t]his is not the first time." According to Lau, this statement shows that the trial court relied on the criminal history described in the People's sentencing statements. Lau's contention fails because the trial court referred solely to Lau's admissions to the detectives to support this assertion, stating that "*the statements of the Defendant* give us an indication that Defendant has had this problem before. This is not the first time." (Italics added.) Indeed, during his police interview, Lau made several statements that the trial court could reasonably interpret as referring to past sexual assault accusations against him.

We accordingly reject Lau's contention that the trial court violated his right to due process by basing its registration order on unreliable and unproven facts.

D. *The Trial Court's Registration Order Was Supported by Substantial Evidence*

Lau's final contention is that the evidence does not support the trial court's registration order.

As an initial matter we address the applicable standard of review. The imposition of a registration order under section 290.006 is within the discretion of the trial court, and thus is subject to an abuse of discretion review. (Cf. *Hofsheier, supra,* 37 Cal.4th at p. 1197 ["the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case"].) However, "[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-

19

712.) Accordingly, because Lau challenges the evidentiary support for the trial court's imposition of the registration order, we will apply a substantial evidence standard of review. (*Lewis, supra,* 169 Cal.App.4th at p. 79 [analysis of whether substantial evidence supported trial court's discretionary decision to require sex offender registration].)

As a basis for its registration order, the trial court found "that there is a preponderance of the evidence that it is more likely true than not true that the offense, the assault in this case was committed for purposes of sexual gratification, or as a result of sexual compulsion." Lau contends that even under the preponderance of the evidence standard of proof, there is no substantial evidence for the trial court's finding because Mary's credibility "was utterly lacking under any standard of proof. She was a serial liar." Lau further argues that although he admitted to the detectives that he engaged in sexual activity with Mary, the trial court should have "accepted [Lau's] explanation" that he made the admission only because he was badgered by the detectives. Lau contends that if Mary's testimony is discredited and his own statements to the detectives are disregarded as false admissions, no substantial evidence supports the trial court's finding that he assaulted Mary for purposes of sexual gratification or as a result of sexual compulsion.

We reject Lau's challenge to the sufficiency of the evidence. The trial court was not bound by the jury's verdict for purposes of exercising its discretion under section 290.006, and thus was not required to make the same credibility determinations as the jury. (See *Mosley, supra,* 60 Cal.4th at p. 1049 [trial court properly made its own finding that defendant's assault was committed as a result of sexual compulsion or for purposes of sexual gratification even though the jury acquitted the defendant of a lewd act charge and convicted him only of simple assault].) Indeed, " '[i]n order to

make a discretionary determination as to whether or not to require registration [under section 290.006], the trial court logically should be able to consider all relevant information available to it at the time it makes its decision.' " (*Lewis, supra,* 169 Cal.App.4th at p. 79.) "[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness," and "we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." (*People v. Jones* (1990) 51 Cal.3d 294, 314).

Having decided to credit Mary's testimony about the assault and disbelieve Lau's contention that he made false admissions to the detectives, the trial court had ample evidence before it in the form of Lau's own statements to the detectives and Mary's trial testimony to support a finding that Lau assaulted Mary for purposes of sexual gratification or as a result of sexual compulsion.

DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:



HUFFMAN, Acting P. J.



HALLER, J.